432 F.2d 682
 Anthony R. MARTIN-TRIGONA, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
American Broadcasting Companies, Inc., Columbia Broadcasting System, Inc., National Broadcasting Company, Inc., Intervenors.
 No. 23601.
 United States Court of Appeals, District of Columbia Circuit.
 Argued June 30, 1970.
 Decided August 6, 1970.
 
 Mr. Anthony R. Martin-Trigona, appellant pro se.
 Mr. Edward J. Kuhlmann, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and John H. Conlin, Associate General Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Stuart F. Feldstein, Counsel, Federal Communications Commission, also entered an appearance for appellee.
 Mr. J. Roger Wollenberg, with whom Messrs. Joel Rosenbloom and Jay F. Lapin, Washington, D. C., were on the brief, for intervenor, Columbia Broadcasting System, Inc.
 Messrs. James A. McKenna, Jr., Vernon L. Wilkinson, and Norman P. Leventhal, Washington, D. C., were on the brief for intervenor, American Broadcasting Companies, Inc.
 Mr. Samuel D. Slade, Washington, D. C., was on the brief for intervenor, National Broadcasting Co., Inc.
 Before McGOWAN, TAMM and MacKINNON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner, a resident of Urbana, Illinois, asked the Federal Communications Commission to revoke the licenses of the three television stations in New York City owned, respectively, by the CBS, NBC, and ABC networks. His petitions were dismissed by the Commission on the ground that his allegations failed to show the kind of interest which gave him standing to oppose renewal of these licenses; and he brought this statutory review proceeding.
 
 
 2
 It is clear from petitioner's pleadings before the Commission that he is unhappy about the networks, but it is far from clear that his objections are peculiar to the three so-called "flagship" stations in New York City, which are not, of course, the only stations in the country owned and operated by the intervenor networks. His concerns about the networks focus largely upon their conglomerate character, and the conflicts of interest and other problems which allegedly flow therefrom. He also believes that the present network structure lends itself to conflict with national antitrust policies, and creates undesirable concentrations of power which are not in the interest of the country at large. Petitioner is concededly not a viewer of the program output of the stations in question, and he does not expressly challenge the program content of the network affiliate in the area of his residence. He does assert in general terms that the networks are guilty of excessive commercialization and unduly sensitive of the interests of their present and potential advertisers, with the result that network programs are on the cautious and dull side.[1]
 
 
 3
 Much is made by petitioner here of our decision in Office of Communications of United Church of Christ v. FCC, 123 U. S.App.D.C. 328, 359 F.2d 994 (1966). We, however, see little or no relationship between him and the complainants in that case, who were objecting on specific grounds to the license renewal of the key station in their viewing area. Petitioner, in contrast, raises broad policy questions, and doubtless important ones, about the broadcasting structure as a whole. Those questions are in important respects identical with the issues which we recently said are more appropriate for exploration and resolution in rule making than in adjudication. Hale v. FCC, 138 U.S.App.D.C. 125, 425 F.2d 556 (1970). As we said there, the "policy questions [raised] are applicable to the communications industry as a whole, and are not peculiar to one unit of it."
 
 
 4
 The network intervenors have suggested that, while petitioner may well be regarded as having standing to petition the Commission to initiate rule making and, in appropriate circumstances, to secure judicial review of the denial of such a petition, he is without standing to complain of these license renewals. Whether the matter is best approached analytically in traditional standing terms seems to us questionable. In any event, the particular verbal formulation is not of critical significance in this instance to our decision to leave the Commission's disposition undisturbed. The issues which petitioner sought to raise do not have such relevance to the individual station license renewals as would necessitate their pursuit by the Commission in the renewal proceedings.[2]
 
 The petition for review is
 
 5
 Denied.
 
 
 
 Notes:
 
 
 [1]
 An example of petitioner's generalized complaints is that the networks use too many movies in prime time. In a rule making proceeding the Commission has, since the briefs in this case were filed, amended its rules relating to affiliation agreements and network programs by limiting, after September 1, 1971, the licensees in the top fifty TV markets to three hours of network programming between 7:00 and 11:00 P.M. The stations may not substitute off-network serials or feature films previously broadcast; and the networks may not distribute TV programs for non-network exhibition. 35 F.R. 7417. This rule making proceeding is continuing for further study of the new rule in actual operation
 
 
 [2]
 The Commission has already launched a detailed inquiry into the ownership of licenses in the broadcast field by conglomerates, a subject which appears to be petitioner's principal concern. 16 F.C.C.2d 436, 34 F.R. 2151. In another policy area of interest to petitioner, the Commissioner has already acted, after rule making proceedings, to amend its multiple ownership roles to restrict a licensee to one full-time station (TV, AM, or FM) in a single market. 22 F.C.C.2d 306, 35 F.R. 5948. The rule is prospective in terms, but the Commission has issued a further rule making notice in which it proposes to consider the application of the rule to existing facilities, and also a new proposal for the separation of commonly-owned newspapers and broadcast stations in the same market